Good morning panel, counsel, may it please the court, my name is Attorney James Straub and I represent the interests of the two remaining defendants in this case. Isidore DiMaggio, who is the superintendent of Hagar Township, which is a township located in Berrien County, Michigan. And for Justice White, who I know is familiar with Michigan because of that sort of background, it's on the west coast of Michigan over by St. Joseph and the southwest corner of Michigan. The original pleadings in this case, oh I have reserved five minutes for my rebuttal, I apologize. This is somewhat of a unique case because this case involves not a federal issue. So the court will be ruling on state law in Michigan. And of course, and I don't mean to be impertinent, but of course the court needs to be aware of the requirements of Erie v. Tompkins, which obviously this panel or this Sixth Circuit has adopted in the case of Carnation Company v. Parks Construction. And it is the intent, of course, of federal courts that outcome of litigation in the federal courts should be substantially the same as what it would be if this matter were heard in the presence of a state court. And since we're dealing with diversity of jurisdiction, diversity of citizenship here, and that's why the matter is in front of the court, I would simply ask the court to pay particular attention to the Erie v. Tompkins determination. Let me give a little bit of background here. Just speaking of Erie, have you all thought about certifying this to the Michigan Supreme Court or getting input from the Michigan Attorney General's office? I have not approached it from that perspective, Your Honor. No, I haven't. I mean, there's an awful lot of conspicuously intermediate court of appeals decision under Michigan law on these issues, and I just wondered if that wasn't a good resolution for everybody. Well, certainly I would entertain that as an opportunity. I have not pursued it in that fashion because the matter was brought in front of Judge Neff on a diversity approach, and I felt, given the circumstances... You can certify from district courts, courts of appeals. That's what certification is. It's from the federal court to the state court. And then the other thing is, the only reason I mention Michigan Attorney General, I don't know how that office works, but I know in Ohio, the Ohio Attorney General has opinion authority where they offer opinions interpreting state law all the time, and they're usually quite expert at, frankly, exactly this type of thing, how local government law works. I am not familiar with that procedural approach, Your Honor, and I certainly would investigate it, and if the court is of a mind to recommend that as part of its proceedings here, I certainly would entertain that opportunity. Counsel, as I understand it, you brought a motion to dismiss, right? And Judge Neff said, you haven't given me enough. It wasn't, no, you're not entitled to immunity as a definite matter. It's like, look, this is on the pleadings. You haven't answered my questions regarding whether you're entitled to immunity, and it doesn't... Right now, I'm not talking about the appealability. I'm saying that it just seems like the door is wide open, that it's simply, and I think she cited to the Michigan Court of Appeals decision that had, I think Yap was one of the parties where the Michigan Court of Appeals had a very similar reaction. Like, you know, we're not saying you're not entitled to immunity, but you didn't give the judge anything. I mean, why is this... I don't read anything she says as foreclosing absolute immunity for your clients. So I'm not sure, you know, why you wouldn't just rebrief it and give it another shot, or take a couple, you know, you had absolutely no affidavits attached, right? Or am I wrong? And some of us don't have such animals in their states, and so we don't even know the distinction. The only thing we know, the only thing you provided is that they were elected, and if I, I'm not even sure. I think that statute applies to both types of townships. I don't even know. Nobody even spelled it out. There's no affidavit even saying what they are, and it's not clear on the face of the complaint, nor your answer. So I just, why do you feel that the judge had enough, that it was so clear that your clients were entitled to immunity based on what you gave her? I understand your concern. I think what, if I can address the issue from this perspective. What the judge relied upon was a case that was cited by the plaintiff, Rankin. It's an unreported decision by the Michigan Court of Appeals, and there was a footnote in that case. That particular case of Rankin involved a much more complicated set of defendants, individual defendants. It involved a mayor, and there, in a mayor, in a city circumstance, as the court is well aware, at least Justice White, you're aware that in Michigan there can be multiple types of mayor classifications, so a city charter is important. They sued the city attorney in Rankin. They sued the economic development director. All of these individuals who did not have a specific classification in the statute. In Michigan, under the statute that I cited to Judge Neff, there is a specific classification. We have a supervisor. We have a clerk. I don't want to speak for Judge White, but I think what she's saying, and this is what I think as well, is, okay, let's just say she shouldn't have relied on Rankin. Tell us how township clerks work, how township supervisors work. How does Michigan law work in this area? I appreciate that, and perhaps I was... At summary judgment, you can attach affidavits. If you need some discovery, you can have some discovery. You can attach whatever provisions, like charter or whatever, or state law provisions might be applicable. I mean, the state law, we could take judicial notice of that, but it would be real helpful to know what sort of officials these are. Well, Ms. Masseron, who is the amicus or the amici brief writer in this case, who has argued in this case multiple times before, presented a very reasoned outline of what the township is. You know, to the extent there are matters of proof that you think support your position, it would be, as my colleagues have pointed out, it would be very, very, very easy to amplify the record, to explain that. But you're in a difficult posture now, where there's absolutely nothing in the record other than the plaintiff's allegations. Which, I would point out, resolve all of the issues that are presented in that footnote, which is based upon the pedocrine decision. It's simple, because the pedocrine decision talks about that a person, in order to qualify for absolute immunity under subsection 5, that person is he or she is a judge, a legislator, or the elective or highest appointive executive official of a level of government. Okay, counsel, I'm sorry. Is a charter, for all of these issues, are charter townships treated the same as regular townships? Absolutely. There's no difference. Are they legislatures or executive? What should we call them? They are in between. Wouldn't there be a real question about whether the portion of the immunity statute that relates to executives is applicable to them? It seems to speak in terms of a single official. How do we know if that's correct and who that single official would be in this case? We just don't know enough. Well, I can understand the court's resolution. What's your point, though? Is your point that the two defendants are legislators? Is that your point? Yes. And they also have executive powers when they're acting as a board. So that's how you're getting out of the V problem with the executive. Absolutely. Yes, Your Honor. The only case you have for that is one that's a charter township, though, not a township like this. There's really no distinction for the purpose of this case between... I appreciate the court's... So I would sum this up as both a problem of proof and a problem with respect to adequately apprising us of things that might not need to be proved but that go to the way in which an entity like the town here is governed. I understand the court's... Were these legislative acts that they were performing? No, Your Honor. They were in township circumstances. There is no true executive. There's no true legislative. They have a mix of responsibility. As it's set forth in MCL 4170, they act as a group with a vote. So are they immune for everything they do? They are immune for everything they do under subsection 5. And it doesn't matter what the nature of the act is as long as it's authorized? As long as they act within the scope of their judicial, legislative, or executive authority, pedoprine case. And that's what they did. They're accused as their offices indicate in the complaint, in the pleading itself. The pleading itself eliminates all of these problems because it says they have the authority to act and didn't. It says that this is a township and it had the authority. It says that those matters are all pled. Why is it a legislative act to decide whether to post signs about a riptide? Why is that a legislative act as opposed to an executive act? That's why I say... I understand the point that townships perhaps involve people exercising lots of different power. Certainly. But I'm still allowed to ask which power is being exercised. And why isn't this more executive? And if it's more executive, that makes one think you should have the person and not two. So just... I'm not telling you the answer. I'm asking. Sure. The only thing that I could answer that, how I would respond to that, Your Honor, is that under Section 4170, it talks about how the township board acts. It acts through its meetings and its resolutions. That's how it acts. So is this township clerk, is that what it sounds like, which would be a person who is neither legislative or executive, probably, but somebody who is just performing ministerial functions? No, it's not that, because she is a member, in this particular case, Ms. Kelly, was a member of the township board. It's set straight out in the statutes that we have indicated here. She's a member of the township board. Why is she called a clerk? It's the office. It's the office. I know, but what does it denote about her office that is clerical in nature, or is it just a total misnomer? You're asking me to comment on what the state legislature did many, many decades ago. No, no. I just wonder, does she have any duties that could be described as clerical? Does she have any duties that, for example, are different from the supervisor? Her duty statutorily would be to keep the records of the township. And perhaps some election-related matters? And election-related matters. The treasurer, who is another officer of the township board, would have responsibility for tax collection and tax notices going out. But as they act, they act as a group in their vote, as set forth in MCL 41.7. It might help if we knew what connection, if we knew exactly how they had undertaken, if they have, to provide protection for swimmers on the beaches. I'm not suggesting you tell us now because it's not in the record. I'm just saying that that might be another area to look at because it might be that at some points they are exercising, if they're both, they might be exercising executive authority, they might be exercising legislative authority. We don't really know. We can't analyze how the statute applies until we have a little more information. I can understand that, and I'm way out of time here, so I would point out that your focus has been solely and completely on subsection 5 of section 691.1407, which is the immunity statute. If you move to subsection 2, you can indicate, assume that these individuals, Kelly and the superintendent, are simply governmental functionaries. And under that standard, they are also entitled to discretion. As a matter of law, they cannot be, no matter what the facts are, they cannot be the probable cause, the proximate cause. That is correct. If you read the pleadings and you read the case law in Michigan, I would agree with that statement. So, counsel, I'm not going to prolong this, but I probably just missed it, but when I went through your answer, or you didn't file an answer, your motion, I don't even think I saw a reference to Chapter 41. I saw a reference to the election. That is accurate. So what do you want the court to do? I mean, you've given us more information in this argument than you gave the district court. I'm not saying you're not entitled to a ruling as a matter of law, but given the way the Michigan court handled that interlocutory appeal where there wasn't enough, this is just the way a Michigan court would handle the case and say, you know, you haven't given us enough. Not that you're not entitled to it ever, but, you know, we don't know. I understand the court's position. We'll hear from your adversary. So how would this work? I mean, this seems like a policy call of, you know, what do you do with riptide warnings and the like in terms of signs at the beach. I suspect the state legislature, if it wanted, could enact a law about that, right? Yes. Okay. So they can do that. And so I assume if you sued the state legislature for not having a rule about what to do when you get these weather service warnings, tornadoes, hurricanes, riptides, they would easily win, right? That would be a classic one. I expect so, yes. And so it just seems funny to me that they've done nothing, which of course is why the township is on the hook, because obviously if you had a state law, it would be over, because that's clearly absolute immunity. So they've done nothing on this, even though it's the state's coastline. And now the poor township is stuck for also being silent about a policy on this? It just seems really funny to me. Well, it's not, Judge. First, let me say it's a privilege to stand before you and make an argument. May it please the Court. I'm John Turk here on behalf of the Appalee. But to answer your question, Judge Sutton, directly, it's not simply not having a policy. The core of the complaint here against the court... I mean, you could solve this problem with a state or local law that says, hey, when you get a warning from the National Weather Service, put up signs about the riptide, the tornado, the high winds. I wish there were such a law. I agree. There isn't one, however. And Hagar Township holds itself out as maintaining, being responsible for maintaining that beach. I pled that very specifically in the complaint. They hold themselves out on their website as providing... I'm not doubting that. Okay. I get it. And so I'm hoping I am responding directly to your question. Why doesn't my question show that what's going on is a legislative-type act? I think we just agreed the Michigan legislature could take care of this through legislation. They surely wouldn't take care of it through their executive branch. They have a rule. Excuse me for interrupting. The fact that the Michigan legislature has not acted, does not absolve the township employees for responsibility for not doing, not protecting the public, which they've already undertaken some duty to protect. For example, they did post at the beach that one riptide sign, the small sign high up on a tree. That's not posted by anybody, so far as I know, by anybody other than township folks. And so the core complaint here is not that there should have been a policy, although if there had been one, this wouldn't have happened. But the core complaint here is that the township officials had unique, specific knowledge of dangerous conditions at that beach, at the lakefront, along that coastline, rip current warnings and small craft advisories. Mr. Klopacky and his wife, Mrs. Krawcheck, did not have access to that information. And this complaint says essentially... Do you know what happens to other towns, counties, cities that border Huron or Michigan? I have some knowledge of one, South Haven. And they have now, as I understand it, in response to a lawsuit very much like this one, enacted a flag system. And I know that because I was involved in the handling of that civil case. But their young father died as he was trying to save some kids, and after he had spent all of his energy saving them, successfully he succumbed to the riptide and drowned. And there, as a result of some negotiations, part of the resolution was efforts to help prevent this from happening again, including a flag system so that township officials or city officials could put up a red flag if it meant essentially dangerous conditions. Or shut down the beach. Or shut down the beach. That's exactly right. That's one of the things we say should have been done here in Hangar Township. Shut down the beach? Yeah. Either that or, at the very least, warn the people who are going to the beach that these rip current advisories and small craft advisories have been issued. Because, remember, that rip current sign that's posted on the tree is there 365 days a year. It doesn't tell anyone that there are unique conditions on this day, as opposed to, say, December 12th or June 2nd or July 4th. This happens all the time. Yes. I mean, there are a lot of, this is not something odd. That's exactly right. And it's tragic because the municipalities have access to this information. The folks who are visiting the beach who have no idea that these rip currents, conditions are right for serious rip currents and deadly rip currents, are there. That's why. What about the possibility, suggested in some of the case law, that townships are not classically divided with normal separation of powers principles, that these townships are small and they're kind of doing all things at once, judicial, executive, legislative. Because if it's a legislative act at issue, then you would seem to have a problem under the absolute immunity statute. I would agree. First, I don't think this was a legislative act. This didn't require a vote of the town board. I mean, I'm not suggesting that the township board should have convened a meeting that morning and said in light of these warnings that have been issued by NOAA or the National Weather Service, we should close the beach. All in favor, raise your hands and say aye. And then send someone out to the beach to close it. No, but you could make a prospective rule that says we always close the beach when we're here. We always put a flag up. That sounds legislative. So I'm trying to figure out what one does with that. That's not the claim I'm bringing. I'm not bringing a claim which says the township should have had that policy in place. What I'm saying is they should have responded on this particular day to these particular warnings and either close the beach or at least put up some kind of warning, i.e., a flag system, to alert people that conditions today are different. They're dangerous in a way that they aren't on some other days. And maybe that means they've got to do that on a lot of days during the summer or the time when people are going to use the water, but that's the price that has to be paid to protect their citizens and those they invite. In light of this lawsuit, they'll respond through executive branch-type action or through legislative-type action? It seems pretty obvious to me. They'll make a policy. It sounds legislative. I don't know. I would hope. But it's not going to bring back Mr. Klepecki. So do you have cases that say that when you're dealing with a township, first of all, do you also take the position that there's no difference? In terms of the analysis, there's no difference between a township and a chartered township? I just don't know either way. I apologize. I don't. Okay. So we know that townships, at least chartered townships under the case, they have these bodies that do everything, but they're essentially legislative. There's no true executive in the sense. Do you have any cases that say that when someone, when a township board member acts in a manner that we would think of as executive, although that person is not recognized as an executive, that they're not immune even when they are acts within the scope of their authority? I don't have any case either way. Okay. Do you have any? This is the type of case that is normally decided as a matter of law once you know the facts. And if you can't identify any facts that bear on that question, then the judge decides it. Normally we don't get cases that come up where the judge says, well, you haven't given me enough law, which is another way of saying I don't know the answer yet. So in that kind of case, I don't know. When I was a trial judge, you say, this is all very nice. I'll see you in a few weeks when you've done your job. I would have been a little nicer than that. But so like why isn't it up to the two of you to be briefing this in a way that's adequate so that Judge Neff could do her job? Like why can you just sit there and go, well, you know, I don't know, or this or that, and there aren't cases. I mean. Candidly, Judge, that specific question has not been raised. It has not been asserted by anybody. And I'm not here saying that I know that there's a difference in the way charter townships are quote-unquote regulated. Okay. Well, answer this. Why don't they have immunity? Because. What cases say they don't have immunity? The statute is my number one answer to that. And the reason is the reason that one of the panel members alluded to in response to Brother Counsel's questioning, namely that both cannot be the highest elected elective official. We are. That focuses on the assumption they're executive branch, which takes us back to what we've been wondering about. Well, but the statute. I understand, although the statute 691.1407 sub 5 provides in pertinent part that a judge, legislator, and the elective or highest appointed executive official of all levels of government are immune from tort liability. The record is bare. There are no affidavits. There's nothing else provided as to what the scope of the supervisor's duties are here, what the scope of the clerk's duties are here, what the scope of the duties are of anyone else who's on the township board or otherwise. And it would be the defendant's job to establish that they were entitled to qualified immunity. That's right. It's an affirmative defense. Not yours to establish that they were not. But I'm going to ask you one other question that's kind of just, you know, background in nature for me. What kind of township, I don't mean, I'm not asking you a legal question, but, I mean, is this a township that has other employees, does it have employees, is it tiny, is it? It is. Mr. Straub will know better than I will because he represents it. It is a tiny township, small, I couldn't tell you population. I believe, yes, it has other employees, clerical staff, I imagine, parking enforcement folks who put tickets on cars for expired meters. Fewer than ten overall? Pardon me? Fewer than ten overall? I don't know the answer to that question. Does it have a police force? Does it have a fire department, you know? I just, you know. Sorry, I don't know. I don't know. Do you know of any, has it delegated, does the board of supervisors or whatever it is, do you know if it's taken any actions delegating authority with respect to the beach and maintaining its safety? I don't know. I've looked through old meeting minutes and I can't tell, discern from those which are available on the township's website, if it has done any of those things or has decided not to do any of those things. That's exactly why I have been frustrated with the inability to do discovery. I'd like to do some discovery, depositions of folks there, see what all of the minutes say, even those which are not available on the township's website, so that we can flesh out these issues so that Judge Neff can, and we can go back armed with your good ideas on what we should be talking to her about and other issues we should be looking at that, candidly, neither of us have looked at yet, have that information so the record can be pulled. What do you think about certification of the Michigan Supreme Court? Because the case law, I must say, is not that clear to me, having read a bunch of these cases. I recognize we can do that. I haven't given any consideration to that. I think we have a supremely talented bench, well, both in the Eastern and Western District, but Judge Neff is more than capable of handling that question. I agree with Brother Counsel that, of course, the court should be applying Michigan law as it thinks it would be. So I understand and I appreciate the suggestion, Your Honor. I don't think that there's any decided advantage in doing that, given who we have on the trial court in this matter. Well, and actually, I mean, the Michigan Supreme Court, while it certainly would probably know more about supervisory boards and townships, it really couldn't rely on its personal knowledge. I mean, it's going to need a record just like we do. That's right. That's right. Well, just to be clear, I'm just making the point I have no idea what this absolute immunity statute means, none. I find it really bizarre the way it's worded. I don't know what they're trying to get at. I can't believe they're trying to deprive local townships when they've got a couple executive branch officials. That makes no sense to me. What might make sense is the fact that these local townships really aren't operating as, quote, legislative, which is what one case suggests, but it's intermediate, and that's the legal issue that's interesting to me. How do they mean this absolute immunity statute to work with a local government structure? I understand. The qualified immunity one is easy to figure out. Everything else about the absolute immunity one, easy to figure out. Local knowledge, that's not for them. That's the question that I'm at sea on in the case, having read quite a few of these cases. And I'm sorry I can't do more to pull you to shore, at least to my shore, Judge, but I think that if- Well, tell me a case. If I might. Tell me a case that clarifies it. I don't know of one that does, Your Honor, and so that's why I think we ought to, I think the best result and the thing that makes most sense is to send us back to Judge Neff, give us the opportunity to conduct some discovery on what the township is made of, town, fire, other employees, what the duties are of each of these folks, what their history has been of closing the beach, what policies, if any, they have in place. But we don't even have an affidavit from the supervisor or the clerk, the individual defendants here, telling us in their view what they have done. And so I can discern as much as I can from the website and other reading about the township. I have, I think, a good faith belief that they each had authority to close the beach if they had decided to do that on that day. And so that's why that allegation was made against each of them. But I think a plain reading of that statute, understanding that I can't bring you to shore, Judge, as much as I'd like, is to say that it seems clear that you can't have multiple people entitled to absolute immunity when they are at that same level of government. But you can't have multiple legislators. Well, I... Right, because it says A, right? It says A legislator. A judge legislator. Not legislature, but legislator. No, no, no. But just to make sure we're on the same page. It says A judge. That means any judge at a local level. A legislator. I read that to mean any legislator. A legislative body. Oh, I understand. I apologize. Then next it says the elective. That's the thing you're milking. I get it. It makes a lot of sense. But then the question is what is a township? And what are they doing? Are they acting legislatively or in executive branch fashion? That's the question which I don't think the cases answer. I'm quite confident discovery is not going to answer. But, you know, it's up to the two of you how to do it. Well, I think we'll hear from Mr. Straub. Thank you. I have the temerity to stand here again. May I comment one thing to kind of tie in with where we're at here? The case of Armstrong versus Ypsilanti Charter Township. I understand, Judge Sutton, that that clearly is a charter township. But that case involved a disgruntled employee who was an assistant superintendent. He was the assistant of the superintendent. The township board of trustees was unhappy. They met and they cut out the budget line item, voted to remove the budget line item from the township budget, and therefore that person's paycheck was cut off, and therefore he had to be terminated. So that individual filed suit against all of the township trustees that voted against him. And the court, Michigan Court of Appeals, gave them all, all of the township trustees, immunity under Subsection 5. So when you ask me does it make any difference between charter township and general law township in Michigan, the answer is, under those circumstances, clearly no. And that's really what we have here. There is no distinction. These board members, essentially DiMaggio and Kelly,  under 168, which was cited in my initial brief, were elected officials, identified as officials, in the township of Hager. They are entitled, even though there might be multiples, to absolute immunity under Subsection 5. Now we've all spent a lot of time here arguing about Subsection 5, the absolute issues. We have spent very little time arguing about the gross negligence claim, which is really the only claim that survived. It's really hard to find a gross negligence proximate cause case where it's resolved on a motion to dismiss. And that's just a really difficult thing to do. I mean, I'll go back through your briefs. If you found that magic case, I'm really impressed. I did. There is one. The name is? Beals v. State of Michigan. All right, I'll look at it. Okay, and what happened there? Let me just give you a brief history of the facts. The State of Michigan has an institution where they provide educational services to people that are handicapped. They have a swimming pool. They hire one of the young men that was at this program who was lifeguard certified. His attention is diverted by apparently some female students. He's not paying attention to the pool. Another student dives into the pool, and he drowns. The lifeguard, his attention is never brought to that person that drowned until some of the other students bring his attention to it. Who are the defendants in that case? The defendant is the individual lifeguard and the State of Michigan. The State of Michigan was dismissed. It's absolutely immune under subsection 1 of this section 1407. Now, this young man, Mr. Harmon, asked for what we'll call for federal purposes your qualified immunity under subsection 2 of section 1407. And the Michigan Supreme Court in June of 2015, I might have that date wrong, it might be September of 2015, found as a matter of law that the inattentiveness of that lifeguard was not the proximate cause of this young man's death. Now, that is exactly what we have here. So we have spent... How did the kid die again? He drowned. I know, but was he playing with other kids? We don't know. There's no evidence. Did anyone see him? You said another kid jumped in. A young man, the plaintiff, the decedent, jumped in the water. He went into the water. And he never came up. No one knows why he drowned. No one knows why he drowned. Well, I imagine he drowned. I mean, there may have been found not to be proximate cause, but I imagine he wouldn't have drowned if the lifeguard had been paying attention and pulling him out. So whatever the case is, it doesn't seem to me... I'm fully aware of it, Your Honor, but my point is this. I mean, obviously he jumped in, but there wasn't anybody there to pull him out. Absolutely correct. And what happened there is that the Michigan Supreme Court, this is the Supreme Court of the state, said that the proximate cause was not the young man's inattentiveness, the guard's inattentiveness, at all. That wasn't the cause. The most proximate immediate cause was whatever caused him to drown, whether he had a... I'm going to read it. It's a good case. It's a very good case. If you're not telling me the truth, it's a good case. I'll read it. It's in my brief, and it was decided, this case was decided, after the briefs were filed in the underlying court, in the district court, but before Judge Neff rendered her opinion. And also, one last thing, because I... Your time is up. My time is up. Thank you for your time. I'd ask you also to take a look at Ms. Masseron's briefing on this. I think it's exceptional. We thank you both for your arguments, and we'll consider the case carefully. Thank you.